Pamela Pitt (SBN 156395)
 pittlawoffice@gmail.com
Maria Bourn (SBN 269322)
 mariabourn@gmail.com
LAW OFFICE OF PAMELA PITT
22 Battery Street, Suite 1000
San Francisco, CA 94111
Tel: 415-291-0251
Fax: 415-291-9252

Attorneys for Plaintiff
TWIALLA TURNER

Michele Ballard Miller (SBN 104198)
 mbm@millerlawgroup.com
Jennifer Cotner (SBN 255785)
 jrc@millerlawgroup.com
MILLER LAW GROUP
A Professional Corporation
111 Sutter Street, Suite 700
San Francisco, CA 94104
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWIALLA TURNER,<br><br>          Plaintiff,<br><br>v.<br><br>J. P. MORGAN CHASE BANK, and DOES 1 through 20, DEFENDANTS,<br><br>          Defendants. | Case No.: CV 12 4161 JSW<br><br>**STIPULATION AND [PROPOSED] ORDER TO ARBITRATE AND STAY ACTION AND REQUIRING JOINT STATUS REPORTS**<br>Complaint filed: August 8, 2012 |

Plaintiff TWIALLA TURNER ("Plaintiff") and Defendant JPMORGAN CHASE BANK, N.A. (incorrectly named as J. P. Morgan Chase Bank) ("Defendant"), through their respective attorneys, hereby stipulate as follows:

WHEREAS, Plaintiff signed an offer letter on or about August 17, 2010 requiring that she agree to resolve all employment-related disputes with her employer that cannot be resolved internally to binding arbitration, as set forth in the Binding Arbitration Agreement (the "Agreement") with Defendant.  True and correct copies of the offer letter and Binding Arbitration Agreement are attached as **Exhibit A**;

WHEREAS, the Agreement indicates that all "covered claims" "shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement."  (Agreement, ¶ 1)  "'Covered Claims' include all legally protected employment-related claims, excluding those set forth below in Paragraph 3 and 4 of this agreement [not applicable to this case], that I have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy…."  (Agreement, ¶ 2) In Ms. Turner's offer letter, she signed an affirmation as follows:  "I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the **Binding Arbitration Agreement**

<http://www.jpmorganchase.com/pdfdoc/JPMCArbAgreement>. By signing below, I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase." (emphasis in original);

WHEREAS, on August 8, 2012, Plaintiff filed a Complaint against Defendant alleging causes of action for Discrimination on the Basis of Disability, Failure to Accommodate, Failure to Enter into the Interactive Process, Harassment on the Basis of Disability, Failure to Prevent Harassment and Discrimination, and Retaliation for Taking FMLA/CFRA Leave under the California Fair Employment and Housing Act ("FEHA");

WHEREAS, Plaintiff's claims are covered by the Binding Arbitration Agreement, and Plaintiff has agreed to submit this matter to binding arbitration pursuant to the Binding Arbitration Agreement;

WHEREAS, Plaintiff and Defendant have agreed that the action should be stayed with the Court retaining jurisdiction pending the completion of arbitration;

THEREFORE, the parties respectfully request that the Court order that this action be stayed pending arbitration and that this Court retain jurisdiction pending the completion of arbitration or dismissal of the action by the parties.

Dated: September 28, 2012        LAW OFFICE OF PAMELA PITT

By: /s/ Pamela Pitt
Pamela Pitt
Maria Bourn
Attorneys for Plaintiff
TWIALLA TURNER

2
STIPULATION AND [PROPOSED] ORDER TO ARBITRATE AND STAY ACTION
Case No.: CV 12 4161 JSW

1
2  Dated: September 28, 2012                MILLER LAW GROUP
3                                           A Professional Corporation
4
5                                           By:_____/s/_____
                                               Jennifer Cotner
6                                              Attorneys for Defendant
                                               JPMORGAN CHASE BANK, N.A.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
CALIFORNIA

**ORDER**

The Court, having considered the parties' Stipulation and [Proposed] Order to Stay Action, and finding good cause appearing therefore, ORDERS as follows:

Plaintiff is hereby ordered to submit her claims to binding arbitration. The above-entitled action is stayed pending the completion of arbitration with the Court retaining jurisdiction over it pending the completion of arbitration or dismissal of the action by the parties. It is FURTHER ORDERED that the parties shall submit joint status reports every 120 days until the stay is lifted. The first status report shall be due on January 30, 2013.

IT IS SO ORDERED.

Dated: October 2, 2012    By: _____
Hon. Jeffrey S. White
United States District Court Judge

4824-2971-3937, v. 1

**EXHIBIT A**

# CHASE O

August 16, 2010

Twialla Mitchell -Turner
2000 Starling Way
Fairfield, California 94533

Dear Twialla:

Congratulations, and welcome to Chase! We are pleased to confirm the details of the offer for you to join our company!

Our offer of employment is subject to the satisfactory completion of all pre-employment processing, including various background checks, fingerprint processing and drug screening, as well as execution of any other forms necessary for employment. This offer is contingent upon your ability to establish identity and valid employment eligibility by completing the I-9 form on the Onboarding site.

Additionally, JPMorgan Chase participates in the E-Verify Program, which allows employers to electronically compare information taken from the Form I-9 against the records in the Social Security Administration and the Department of Homeland Security's databases. As such, your employment eligibility must be verified by the E-verify program to remain working at JPMC. You will later receive an email regarding accessing the Onboarding site. You must present your identity and employment eligibility documents prior to your first day so that any issues can be resolved before your new opportunity begins.

**Your Key Information**

- Your Role: Personal Banker
- Your Manager: Orion M Martinez can be reached at 209-662-5156
- Your Start Date: September 7, 2010
- Your Branch Location: Fair Oaks and Munroe In Store-Savemart
- Your anticipated Regular Rate of Pay: $15.38 per hour
- Your anticipated Overtime Rate of Pay: $23.08 per hour
- Regularly scheduled pay date is bi-weekly

On your first day, you will report to your manager at 9:00 to 11200 Gold Express Dr, Rancho Cordova, and attend your New Hire Orientation over the phone. Orientation will begin at 9:30, Please dial 866-410-3373, passcode 44181237 a few minutes prior to the start of the call.

Your manager will provide you next steps for your training requirements.

You'll also be eligible to participate in the Personal Banker Incentive Plan. Please ask your new manager about the details of the Plan and how you will earn more money in monthly incentives. Don't forget to ask your Manager about how you can earn your way to a great recognition trip as well! Your incentive opportunities start as soon as you start to sell!

**Important reminders before you start work**

As we discussed, you'll need to successfully complete your background check, fingerprinting, drug testing, and I-9 form BEFORE you begin your new position. Soon you'll receive an email explaining how to complete forms & tests required for all new employees of Chase. To complete your forms, your user name is twialla1 and you will use the same password previously used at the time of your application.

Please complete all necessary forms & requirements in order to avoid delays in your start date or jeopardize your offer of employment. If you need any assistance at any time, please contact me directly, or you may also contact our team by calling 866-473-6765.

How To Learn More

About Chase
Learn more about the company at http://careers.jpmorganchase.com/welcomenewhire. This on-line orientation for newly hired employees will give you a better understanding of our firm and your critical role within the larger organization.

The Code of Conduct at Chase
Before your first day, please read and understand the firm's Code of Conduct at http://www.jpmorganchase.com>About Us>Governance>Code of Conduct. It's important that you clearly understand our standards of conduct and integrity, as well as our expectations of how you'll interact with customers & fellow employees.

In addition, you understand that as a Personal Banker, you will be required to agree to the Consumer Banking Confidentiality and Non-Solicitation Agreement as a condition to participate in any applicable Personal Banker or other Sales Incentive Plans.

Your Benefits
Chase is committed to providing a comprehensive set of benefits choices to our employees and their eligible dependents. Detailed information on the benefits program currently in effect and the enrollment process will be sent to you within a few days of your start date via interoffice mail for full-time benefits-eligible employees or within 31 days of your eligibility date for part-time benefits-eligible employees. You can access additional information on the benefits program in the following ways:
• Prior to your date of hire, via the on-line New Hire Orientation site at http://newhire.jpmorganchase.com/welcomenewhire/
• Upon hire, via the JPMorgan Chase Intranet, at Company Home>HR & Personal>Pay & Benefits>Enrollment Materials

Also, please look at our Employee Discount Web Center on the Intranet to learn about even more ways to benefit from working at Chase.

Your Special Apparel Discount
You'll be wearing Chase apparel in your new position, and your manager will assist you in learning more about how to select and purchase Chase apparel. As part of welcoming you to Chase, you'll receive a special discount towards your first purchase!

Please indicate your acceptance by signing the acknowledgment page of this letter and returning it to me.

We're very excited at the prospect of your joining us! Should you need any further information, please contact me at 559-221-3601.

Sincerely,

**Melissa Mead**
Chase Staffing

By signing and returning this letter I accept the terms described above.

I hereby acknowledge my understanding and agreement to comply with the stipulations of this Agreement.

I have carefully read and fully understand and agree to the foregoing terms.

Agreed and Accepted by     6/17/10
_____     _____
Signature                 Date

**Acknowledgement of the terms and conditions of this offer:**

I understand that:

- This letter contains the entire understanding between me and the Company and supersedes any prior verbal or written communication related to terms and conditions of this offer of employment.
- The Company reserves the right to change terms of the employment, such as salary and work location, at its discretion.
- My offer of employment is subject to satisfactory completion of all pre-employment processing (background check, fingerprint processing, drug screening and my completion of all necessary employment forms). My offer is also contingent upon my ability to establish identity and valid employment eligibility by completing the I-9 form.
- My first 90 days on the job will be an introductory period for me and my manager to ensure that I understand the job's responsibilities, performance standards and policies. This is a period to demonstrate to my manager that I can perform the role, though completion of the 90-day introductory period does not create a contract or guarantee of employment. I will remain an "employee-at-will" at all times, which means that either I or the Company may terminate my employment at any time, for any or no reason.
- I understand that all employees have post-employment responsibilities regarding confidential information. I understand further, as a condition of my participation in any applicable Personal Banker or other Sales Incentive Plans, that I will have certain additional responsibilities that continue after my employment with the firm terminates, including restrictions on solicitation and hiring of the firm's employees and solicitation of certain customers. I understand that I am responsible for knowing which post-employment responsibilities apply to me and I agree to comply with all applicable requirements, including those set forth in the Consumer Banking Confidentiality and Non-Solicitation Agreement (or other similar agreement required by the Firm) which I must affirm in order to participate in any applicable Personal Banker or other Sales Incentive Plans.
- By accepting this offer, I represent that I am not subject to and will not enter any written or oral agreement or arrangement which would restrict me from competing with a prior employer or from soliciting any of a prior employer's customers or employees or otherwise prohibit, restrict or interfere with my ability to perform the functions associated with the position that you have been offered. I further understand and agree that I may not disclose to the firm or use in connection with my employment at the firm any protected trade secrets or protected confidential or proprietary materials of another entity.

I also affirm that I have read and understand the JPMorgan Chase Code of Conduct, and agree as a condition of employment to comply with the Code as in effect from time to time.

I understand that the Code will be available to me through the firm's intranet once I begin employment, and that I can also access the Code via the Internet at http://www.jpmorganchase.com > About Us>Governance>Code of Conduct at any time.

I acknowledge that the Code requires that certain outside activities be approved in writing after I begin employment, and I agree that, if any such required approval is denied, I will cease the relevant activity immediately.

Agreed and Accepted By _____  8-17-10
Signature                                        Date

### Binding Arbitration Affirmation

I understand my employment is subject to my and JPMorgan Chase's agreement to submit employment-related disputes that cannot be resolved internally to binding arbitration, as set forth in the **Binding Arbitration Agreement** <http://www.jpmorganchase.com/pdfdoc/JPMCArbAgreement> . By signing below I acknowledge and agree that I have read and understand the Binding Arbitration Agreement, have accepted its terms and understand that it is a condition of my employment with JPMorgan Chase.

Accepted: _____  Date: 8-17-10

**BINDING ARBITRATION AGREEMENT**

JPMorgan Chase believes that if a dispute related to an employee's or former employee's employment arises, it is in the best interests of both the individual and JPMorgan Chase to resolve the dispute without litigation. Most such disputes are resolved internally through the Firm's Open Communication Policy. When such disputes are not resolved internally, JPMorgan Chase provides for their resolution by binding arbitration as described in this Binding Arbitration Agreement ("Agreement"). "JPMorgan Chase" and the "Firm" as used in this Agreement mean JPMorgan Chase & Co. and all of its direct and indirect subsidiaries.

As a condition of and in consideration of my employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase as follows:

**1. SCOPE:** Any and all "Covered Claims" (as defined below) between me and JPMorgan Chase (collectively "Covered Parties" or "Parties", individually each a "Covered Party" or "Party") shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.

**2. COVERED CLAIMS:** "Covered Claims" include all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement, that I have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, the Worker Adjustment and Retraining Notification Act, and the Sarbanes-Oxley Act of 2002.

**3. EXCLUDED CLAIMS:** This Agreement does not cover, and the following claims are <u>not</u> subject to arbitration under this Agreement: (a) any criminal complaint or proceeding, (b) any claims covered by state unemployment insurance, state or federal disability insurance, and/or state workers' compensation benefit laws, except that claims for retaliation pursuant to these laws shall be subject to arbitration under this Agreement, (c) any claim under the National Labor Relations Act, and (d) claims for benefits under a plan that is governed by Employee Retirement Income Security Act of 1974 ("ERISA").

Further, this Agreement also does not cover any action seeking **only** emergency, temporary or preliminary injunctive relief (including a temporary restraining order) in a court of competent jurisdiction in accordance with applicable law, so long as that action is brought on an individual basis and not on a consolidated basis or as part of a collective or class action, and subject to the following:

- In the event such relief is sought by a Covered Party, who is not otherwise subject to the arbitration requirements of the Financial Industry Regulatory Authority ("FINRA"), after the court issues a ruling concerning emergency, temporary or preliminary injunctive relief, the parties must submit such claim if otherwise considered a Covered Claim to arbitration pursuant to this Agreement, and
- In connection with any such action related to post-employment restrictions (<u>e.g.</u>, actions to enforce rights to trade secrets, or agreements not to compete or solicit customers or employees) on a Covered Party who is otherwise subject to the arbitration requirements of FINRA (absent this Agreement), in order for the Covered Parties to have available to them the expedited arbitration procedures provided by FINRA, after the court issues a ruling concerning emergency, temporary or preliminary injunctive relief, the parties must submit such claim if otherwise considered a Covered Claim to arbitration before FINRA in accordance with its expedited arbitration procedures under FINRA Rule 13804.

**4. CLASS ACTION/COLLECTIVE ACTION WAIVER:** All Covered Claims under this Agreement must be submitted on an individual basis. **No claims may be arbitrated on a class or collective basis**. Covered Parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court. Furthermore, if a court orders that a class, collective, or other representative or joint action should proceed, in no event will such action proceed in the arbitration forum. Claims may not be joined or consolidated in arbitration with disputes brought by other individual(s), unless agreed to in writing by all parties.

The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between: (i) an individual and JPMorgan Chase; and (ii) the individual and any current or former officers, directors,

Rev. 05/05/2009

employees and agents, if such individual is sued for conduct within the scope of their employment. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

5.    **ADMINISTRATIVE AGENCIES:**  I understand that this Agreement does not preclude me from filing an administrative claim or charge with the Equal Employment Opportunity Commission ("EEOC") and/or state and local human rights agencies to investigate alleged violations of laws enforced by the EEOC or those agencies. However, I understand that I am not required to initiate an administrative proceeding before pursuing a Covered Claim under this Agreement.  In the event I file such an administrative proceeding, I understand that I cannot pursue Covered Claims under this Agreement without first exhausting all required administrative remedies, such as obtaining a right to sue notice from the EEOC in order to arbitrate federal discrimination claims that require such a notice.  By responding to administrative agencies, JPMorgan Chase does not waive its right to enforce this Agreement and the arbitrator shall treat a decision of an administrative agency in the same manner as it would be treated by a court of law.

6.    **INITIATING ARBITRATION:** Arbitration under this Agreement shall be conducted before a single arbitrator of the American Arbitration Association ("AAA")(unless the Parties agree upon another mutually acceptable arbitrator, in which case the arbitration will be conducted before such mutually acceptable arbitrator) in accordance with and selected pursuant to the rules and procedures of the Employment Arbitration Rules of the AAA ("AAA Rules") to the extent the AAA Rules do not conflict with the terms of this Agreement.  The AAA Rules will govern issues not explicitly addressed by this Agreement.  Where there is a conflict between this Agreement and the AAA Rules, this Agreement will govern.  I understand that arbitration under this Agreement will occur in the state where I am currently or was most recently employed by the Firm, unless otherwise agreed by the Parties.  Information about AAA is available from its website www.adr.org.  A Covered Party may contact them directly at 1-800-778-7879.  A Covered Party who is otherwise subject to the arbitration requirements of FINRA who wishes to pursue arbitration of a Covered Claim, must file such Covered Claim with AAA (or other mutually acceptable arbitrator), except as otherwise provide in Paragraph 3 of this Agreement.

To initiate arbitration:

- A Covered Party must send a written demand for arbitration to any office of the AAA (or if another mutually acceptable arbitrator has been agreed to by the Parties, to the offices of such other arbitrator). The Covered Party submitting the demand for arbitration must also simultaneously send a copy of the written demand for arbitration to the other Party (if being sent to JPMorgan Chase, the copy should be sent to the following address: JPMorgan Chase & Co. Legal Department, c/o Legal Papers Served, 1 Chase Manhattan Plaza, 26th Floor, New York, NY  10081).

- Both of the following must be included in the demand for arbitration:

    (a) A statement of the nature of the dispute, including the alleged act or omission at issue, the names of the parties involved in the dispute, the amount in controversy, if any, the remedy sought to resolve the issue (including the dollar amount, if any), the mailing address for future correspondence and the legal counsel, if any, and

    (b) Any required filing fee.  if a Covered Claim is filed by me, the filing fee is $100 payable by check, money order or any other method of payment permitted by the AAA (or another mutually acceptable arbitrator agreed to by the parties). In the event the filing fee required by the state or federal court in which the Covered Claim could have been brought is less than $100, JPMorgan Chase agrees to refund to me the difference between $100 and such state or federal court filing fee.  Any demand received by the AAA (or another mutually acceptable arbitrator agreed to by the Parties) that is not accompanied by the required filing fee will be returned.

Nothing in this Agreement releases a Covered Party from any obligation to comply with timely filing requirements and statutes of limitations under applicable law, statutes, or regulations. Thus, whether or not a Covered Party chooses to file with administrative agencies, his/her arbitration must still be initiated as an arbitration within the applicable administrative, statutory or judicial filing time frame, as required by law, and the demand for arbitration must be received at the address above within the time period allowed pursuant to the statute, regulation or other law applicable to the alleged act or omission giving rise to the dispute.

The submission and timing of any response to an arbitration demand shall be in accordance with AAA's Rules, which currently provides that a response be filed within 15 days after the date of the letter from the AAA (or other mutually agreed to arbitrator) acknowledging receipt of the demand for arbitration.

7.    **ARBITRATION PROCEEDINGS:**    The arbitrator will conduct the hearing as expeditiously as possible, while ensuring that all Parties have the opportunity to present evidence and arguments and ensuring that the Agreement is followed.  The arbitrator will set the date, time, and place of the hearing, and AAA (or other arbitration provider mutually agreed to by the parties) will notify the Parties at least thirty (30) calendar days in

advance, unless the Parties otherwise agree. In the event the hearing cannot reasonably be completed in one (1) day, the arbitrator will schedule the hearing to be continued on a date or dates that is/are convenient to both Parties. The arbitrator will make every effort to select a reasonably convenient location for the continued arbitration, without incurring additional expense, if possible.

(a) **Fees:** All ordinary and reasonable administrative expenses of the arbitration, including fees for a single arbitrator, hearing room expenses, travel expenses of the arbitrator, the AAA representatives (if applicable), and any witnesses produced at the arbitrator's specific request and not otherwise called by a party, will be paid completely by JPMorgan Chase. The fees and expenses of any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons. JPMorgan Chase will not pay for fees or costs incurred where there is deliberate and inappropriate delay or absence caused by the complaining party or their counsel as permitted by applicable law. Except as otherwise provided by law, all attorney's fees shall be paid by the party that incurs them.

(b) **Legal Representation and Language Interpreter:** The Parties (if desired) may use the services of legal counsel and/or a language interpreter. The Parties utilizing such services are responsible for making and paying all fee and other arrangements directly with the legal counsel and/or interpreter.

(c) **Attendance at and Confidentiality of Arbitration Hearing:** The Covered Party, a JPMorgan Chase corporate representative of its choosing, and the arbitrator must be present at the hearing. In addition, an official recorder and legal counsel (for any party) also may attend the hearing. Further, the Parties may call witnesses to testify at the arbitration. Unless the parties agree otherwise, the arbitrator shall exclude witnesses (other than the represented Parties) from the hearing during the testimony of any other witness. The arbitrator, the Parties and their representatives must maintain the confidentiality of the hearings unless the law provides otherwise.

(d) **Discovery:** Discovery requests and the provision of discovery must be consistent with this Agreement, general standards of due process, the Rules of AAA and the expedited nature of arbitration. The guidelines below are guidelines and do not establish a minimum of discovery, and will be applied subject to these principles. Thus, there may be cases which warrant less (or more) discovery than that outlined below.

At least twenty (20) days before the arbitration hearing, the Parties must submit the names and addresses of the witnesses each party intends to produce and any documents each party intends to present and may add to such information up to ten (10) days before the hearing.

In general, the Parties may take the depositions of all expert witnesses and up to three (3) other individuals. Any individual who certifies he/she has no direct knowledge of the facts should not be deposed. At least ten (10) days prior notice should be given by the party requesting a deposition and advance efforts should be made to mutually agree on deposition dates including the time and place for any depositions to be taken. The party requesting the deposition is responsible for all related costs for that deposition. Discovery must be completed at least twenty (20) days before the hearing. The arbitrator may alter the timing and scope of discovery.

The arbitrator will resolve discovery disputes and may expand or restrict the scope of discovery within his or her reasonable discretion, and the rules of AAA consistent with the expedited nature of arbitration.

(e) **Prehearing Motions:** The arbitrator is authorized to consider and rule on prehearing motions, including discovery motions, motions to dismiss and summary judgment on the claims, provided that the other party has reasonable notice and time to respond to any such prehearing motions. Any dispute which fails to state a claim upon which relief may be granted under applicable law (including, but not limited to claims that are barred by the applicable statute of limitations or mandated timeframe for filing such claim, or that are barred by an enforceable release, or involve a claim against someone who was not associated with the conduct at issue) is subject to dismissal without an evidentiary hearing. Any ruling regarding such motion shall be made consistent with the *Form of Decision* and *Scope of Relief* sections in this Agreement.

(f) **Time of Decision:** The arbitrator will make the decision within thirty (30) days of the close of the hearing or as soon as possible thereafter, unless otherwise agreed to by the Parties or otherwise specified by law.

(g) **Form of Decision:** The decision will be in writing and signed by the arbitrator. Unless otherwise agreed to by the Parties the decision will include a summary of claims arbitrated and decided, any findings of fact or conclusions of law, and damages and other relief (if any) granted. All decisions shall be executed in the manner required by law. The decision will be final and binding upon the Parties, and appeal of the decision to a court shall be limited as provided by law.

(h) **Scope of Relief:** The arbitrator will be governed by applicable federal, state, and/or local law and the terms and spirit of the Agreement. The arbitrator may grant any remedy or relief that would have been

available to the parties had the matter been heard in court, including the award of monetary damages and the imposition of requirements on the Parties (including injunctive relief), as permitted by applicable law and the remedy or relief that an arbitrator may award is limited to what would have been available in court.  The arbitrator may award only such relief as may be granted for a case brought on an individual basis. The arbitrator may award punitive or exemplary damages or attorneys' fees as provided or limited by applicable law.

       **(i)**     **Enforcement of Arbitration Decision/Judicial Procedure:**  The decision of the arbitrator may be enforced under the terms of the Federal Arbitration Act (Title 9 U.S.C.) and/or under the law of any state to the maximum extent possible. Either party may have an arbitration decision enforced in a court of law in accordance with applicable law.  If this occurs, neither the arbitrator nor AAA will be involved in the court proceedings.

If a court determines that the decision is not completely enforceable, it will be enforced and binding on both parties to the maximum extent permitted by law.

**8.**     **SEVERABILITY:** If any part of this Agreement is held to be void or unenforceable, the remainder of the Agreement will be enforceable and any part may be severed from the remainder as appropriate, to the extent permitted by law.  For example, if a court determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in that jurisdiction, such provision(s) will not be enforced in that jurisdiction, but the exclusivity of the Agreement and its use of arbitration as the sole and exclusive forum for all Covered Claims within its scope shall not be affected.  Any dispute as to the arbitrability of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration.  Notwithstanding the foregoing, any issue concerning the validity of the class, collective, or representative or joint action waiver provided in Paragraph 4 of this Agreement must be decided by a court with jurisdiction over the Parties, and an arbitrator does not have authority to consider the issue of the validity of the waiver.  If for any reason the class, collective, or representative or joint action waiver is found to be unenforceable, the class, collective, or representative or joint action may only be heard in court and may not be arbitrated under this Agreement

**9.**     **AMENDMENT OR TERMINATION OF AGREEMENT:**  JPMorgan Chase reserves the right to amend, modify or discontinue this Agreement at any time in its sole discretion to the extent permitted by applicable law.  Such amendments may be made by publishing them on the JPMorgan Chase Intranet or by separate notification to me and shall be effective thirty (30) calendar days after such amendments are provided to me and will apply on a going forward basis.  Continuation of my employment after receiving such amendments will be considered my acceptance of the amended terms.

*This Agreement does not alter the voluntary ("at will") nature of my employment relationship with the Firm, nor does it afford any rights or remedies not otherwise available under applicable law. Of course, this Agreement does not require that JPMorgan Chase initiate arbitration before taking corrective action of any kind, including termination of employment.*